IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CARL UEDING-NICKEL, | ) | |
| | ) | |
| Petitioner, | ) | 8:19CV78 |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTT FRAKES, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner has filed a petition for a writ of habeas corpus challenging his conviction for sexually assaulting a young girl when the child was 11 years old. Petitioner asserts nine claims. Respondent has answered and filed the relevant state court records. The matter has been fully briefed. The petition will be denied and dismissed with prejudice because one claim has no merit and the others have been procedurally defaulted without sufficient excuse.

### *The Claims*

Claim One: Petitioner was denied effective assistance of trial counsel when trial counsel failed to investigate and present evidence that Petitioner's statement was involuntary on account of severe intoxication.

Claim Two: Petitioner was denied effective assistance of trial counsel when trial counsel failed to investigate and present evidence that Petitioner's statement was involuntary on account of severe mental illness.

Claim Three: Petitioner was denied effective assistance of trial counsel when trial counsel failed to investigate and present evidence that Petitioner's statement was involuntary on account of undue coercion by law enforcement.

Claim Four: Petitioner was denied effective assistance of trial counsel when trial counsel provided deficient performance when litigating a motion to suppress.

Claim Five: Petitioner was denied effective assistance of trial counsel when trial counsel failed to investigate and present exculpatory evidence.

Claim Six: Petitioner was denied effective assistance of trial counsel when trial counsel failed to investigate Petitioner's competency or seek a competency hearing.

Claim Seven: Petitioner was denied effective assistance of appellate counsel when counsel failed to assign as error a *Brady* violation occurring prior to the suppression hearing.

Claim Eight: Petitioner was denied effective assistance of appellate counsel when counsel failed to assign as error the failure of the trial court to order a competency hearing.

Claim Nine: Petitioner was denied effective assistance of appellate counsel when counsel failed to research, brief and argue insufficiency of evidence.

Filing no. 3.

### *The Trial Proceedings*

The evidence against Petitioner adduced at his bench trial was overwhelming. While lengthy, it is best to quote the Nebraska Court of Appeals to get a full and particularized understanding of this matter.

The Court of Appeals wrote:

On January 19, the Omaha Police Department received a call from J.R., Ueding–Nickel's girlfriend at the time, reporting that she had found naked pictures of her 11–year–old daughter on Ueding–Nickel's phone.

Officers were dispatched to the residence J.R. and Ueding–Nickel shared to investigate the reports of sexual assault on the child, O.R. J.R. reported that after the photographs were discovered, Ueding–Nickel and J.R. were involved in a domestic disturbance, and both Ueding–Nickel and the child fled, on foot, from the home. Ueding–Nickel was arrested at approximately 2 a.m. at a convenience store and was taken to police headquarters and placed in an interview room at approximately 2:30 a.m. The video[1] provided shows that Ueding–Nickel remained alone until Sergeant Lance Worley of the Omaha Police Department arrived for an interview at approximately 5:23 a.m.

During the period between 2:30 and 5:23 a.m., Ueding–Nickel interacted with several police officers who conducted a search of his person. He was compliant and followed the officers' directions during the search, and left the interview room to use the restroom without incident. Ueding–Nickel changed positions several times in his seat, appearing, at one point, to fall asleep. Eventually he got out of his seat and lay down on the floor. When Worley entered, he observed Ueding–Nickel asleep on the floor. He asked Ueding–Nickel to get up and sit in the chair by the table, and Ueding–Nickel complied. Worley informed Ueding–Nickel of the investigation and the purpose for the interview. Worley advised Ueding–Nickel of his *Miranda* rights, and Ueding–Nickel verbally responded that he understood his rights, verbally agreed to speak with Worley, and provided background information regarding his educational background, employment history, and past and current residences.

Worley asked Ueding–Nickel if he was under the influence of drugs or alcohol, a standard question Worley asks before conducting an interview. Ueding–Nickel claimed that he had consumed five beers and 12 shots the day before. Worley noted that Ueding–Nickel did not appear to be intoxicated; he responded to the questions appropriately and quickly without hesitation, he did not appear to misunderstand the questions, and he was easy to converse with. Worley asked Ueding–Nickel if he felt

---

[1] The Respondent did not file the DVD given the nature of CM/ECF. However, Respondent has offered to produce it to me. That will be unnecessary since Petitioner does not challenge the description of the contents of the DVD provided by the Nebraska Court of Appeals.

clear-headed and able to answer his questions and Ueding–Nickel said yes, and stated that he was fine.

Ueding–Nickel told Worley that he and J.R. had been in a relationship for about five years, and they had differing work schedules, which meant he was often at home alone with O.R. He indicated that his relationship with O.R. had grown, and he began substituting O.R. for J.R. and they developed a sexual relationship. Ueding–Nickel indicated that the relationship with O.R. began when she was 10 or 11 years old, and that it had been going on for 13 to 14 months. He stated that it began with kissing on the mouth and progressed to back rubs and tickling.

Ueding–Nickel indicated that the week prior to the interview was the first and only time that he had penetrated her vagina with his penis. He stated that O.R. had performed oral sex on him approximately three times, and that he had performed oral sex on O.R. approximately a dozen times. He indicated he had encounters with O.R. roughly once per week, sometimes more, and sometimes less. He stated that he had not threatened or bribed O.R. to get her to participate in the encounters, and that the encounters took place both when he was sober, and when he was intoxicated. Ueding–Nickel stated that he knew treating O.R. "like she was [his] girlfriend" was wrong, but that he intended for the relationship to continue until O.R. was older. He estimated that he had more than 100 encounters with O.R. over the 13 or 14 month period from the time the contact began, until the night he was arrested.

Ueding–Nickel stated that the photos of O.R., discovered on his phone by J.R., were taken with the camera on his phone the previous weekend. He had taken four pictures; one of O.R.'s vagina, one of O.R.'s "boobs," one of O.R. "sucking [his] wiener," and one picture of his "wiener next to her vagina." Ueding–Nickel stated that he took the photos on a whim, and knew it was risky if he got caught. He also expressed surprise that O.R. had participated and allowed him to take the photos.

Ueding–Nickel told Worley that he was not sure how J.R. found the photos. He said he had been sleeping in the basement when he was awakened by loud yelling and heard J.R. tell O.R. to get dressed and get in the car. He said he found J.R. locked in her vehicle, so he smashed the

driver's side window with a brick and took his phone from her hand. He said he threw the phone to the ground, used a landscaping brick to smash it, and then threw it as hard as he could toward the barrier wall near Interstate 80. He stated that he left the home on foot, walked someplace where he could buy and drink a beer and a shot, then turned himself in to police officers at a convenience store.

Ueding–Nickel's attorney[2] filed a motion to suppress on May 7, 2014, seeking to suppress any and all statements he made to Omaha Police officers on or about January 20, 2014. Specifically, he sought to suppress the statements he made to Worley, while in the custody of the police department. He asserted the statements were not knowingly, understandingly, and intelligently made, they were not freely and voluntarily given, and they were made without a "proper knowing, understanding, and intelligent waiver of her [sic] rights against compulsory self-incrimination or his right to counsel." He asserted the statements were a result of words or actions that the police should have known were likely to elicit an incriminatory response, and they were the product of "threats, coercion, deception, and/or inducements by members of the Omaha Police Department." He further asserted the statements were the fruit of a custodial interrogation, and of an unlawful arrest "made without warrant or probable cause to believe the Defendant had committed a criminal offense."

Ueding–Nickel's motion was heard before the district court on July 18, 2014. Worley testified at the suppression hearing, and a DVD recording of the interview was entered into evidence. Worley testified that he had been in law enforcement for over 25 years and that, during that time, he had significant experience with DUI investigations, had been a DUI instructor for approximately 2 years, and he had experience evaluating levels of intoxication. Based on his experience, and Ueding–Nickel's behavior, Worley was of the opinion that Ueding–Nickel was not under

---

[2] A public defender represented Petitioner at the suppression hearing. Counsel moved to withdraw citing the Nebraska Rules of Professional Conduct. Filing no. 5-11 at CM/ECF p. 26. She was allowed to withdraw. Filing no. 5-11 at CM/ECF p. 27. Another lawyer was then appointed and appeared for Petitioner at the bench trial. Filing no. 5-13 at CM/ECF p. 35.

the influence of drugs or alcohol at the time of the interview. Worley testified that he did not think a breath test was necessary, and that Ueding–Nickel's behavior did not match that of someone who had consumed five beers and 12 shots. Worley testified that he did not have any concerns regarding Ueding–Nickel's mental health, and Ueding–Nickel did not make any statements regarding mental health.

The court found no evidence that Ueding–Nickel was intoxicated, or that his statements were not freely and voluntarily given, or the result of improper or undue influence by Officer Worley. The court found there was no evidence that Ueding–Nickel's arrest was unlawful, and the court denied the motion to suppress his statement.

Following a stipulated bench trial, the court found the State proved Ueding–Nickel guilty, beyond a reasonable doubt, of the charge of first degree sexual assault of a child. The court specifically found that "the defendant did in fact engage in sexual penetration, digital and penile penetration into the vagina and the mouth of the victim in this case" during the time charged in the second amended information while the victim was under the age of 12, and Ueding–Nickel was 19 years of age or older. The court found Ueding–Nickel's statement was voluntary, and there was no evidence of intoxication.

The court ordered a presentence investigation and Ueding–Nickel appeared for sentencing on February 10, 2015. The court considered the length of time that Ueding–Nickel participated in sexual contact with the victim, the number of sexual contacts, the age of the victim, and Ueding–Nickel's refusal to accept responsibility for what he had done into account in determining his sentence. The court also considered Ueding–Nickel's history of alcohol use and his diagnosed mental disorders. Ultimately, the court sentenced Ueding–Nickel to a period of incarceration of not less than 50 years nor more than 60 years, and he was given credit for 387 days already served.

*State v. Ueding-Nickel*, No. A-15-210, 2015 WL 7456006, at *1–3 (Neb. Ct. App. Nov. 24, 2015).[3]

---

[3] That opinion is also found at Filing no. 5-3.

In addition to the foregoing, other pieces of evidence produced at the bench trial are particularly relevant. The child was examined by a physician soon after the incident occurred, that is, on January 22, 2014. Among other things, the child told the doctor that Petitioner had penetrated her with his penis and performed other sexual acts on her. Additionally, contemporaneous statements to the police by the child were also received in evidence and those reports detailed a sexual relationship with Petitioner. She also made statements to the police describing in detail the circumstances regarding Petitioner taking the illicit photographs. Additionally, the mother told the police officers about the lewd nature of the photographs that she found and then viewed on Petitioner's cell phone, a cell phone that he destroyed after smashing a car window to retrieve the phone from the child's mother. This evidence and more may be found at Filing no. 5-13 at CM/ECF pp. 39-41 & 64-124.[4] The judge also took judicial notice of the testimony of the police officer (Worley) at the suppression hearing. *Id*. at CM/ECF p. 41.

### *The Direct Appeal and Post-Conviction Proceedings*

After the bench trial, Petitioner appealed and was represented by the same lawyer who had represented him at the bench trial. That appeal raised two issues. He asserted the trial court erred in overruling his motion to suppress and in imposing an excessive sentence. *State v. Ueding-Nickel*, No. A-15-210, 2015 WL 7456006, at * 3. The Nebraska Court of Appeals denied the appeal. *Id.* at * 3-6. Petitioner did not file a petition for further review with the Nebraska Supreme Court. Filing no. 5-1 at CM/ECF p. 4.

Petitioner, then proceeding without counsel, filed a prolix post-conviction action focusing on the alleged deficient actions of the lawyers who represent in the

---

[4] Defense counsel only objected to statements made by his client. He did not object to any other evidence. There were good tactical reasons for this decision. More about that later.

district court and trial counsel who also served as appellate counsel. Filing no. 5-12 at CM/ECF pp. 60-156. The matter was briefed and the judge ruled against Petitioner in a thoughtful opinion but without an evidentiary hearing. The judge persuasively set forth his reasons. In essence, and among other things, Petitioner had failed to show that counsel was ineffective and, in any event, Petitioner was not prejudiced by the actions or inactions of counsel. Filing no. 5-12 at CM/ECF pp.190-195.

Importantly, the judge observed:

> It is clear from the record in this case that the Defendant made a tactical decision to preserve for appeal the Court's denial of his suppression motion by trying the case on stipulated evidence, gaining dismissal of an additional sexual assault charge (Class IIIA Felony), visual depiction of sexually explicit conduct involving a child (Class ID Felony), and tampering with physical evidence (Class IV Felony). The Defendant hoped to benefit from a stipulated trial by not forcing the victim or her mother to testify at a trial, as argued by the Defendant's attorney at his sentencing.

Filing no. 5-12 at CM/ECF p. 192.[5]

After the district court's decision, Petitioner hired counsel and appealed. The appeal was unsuccessful. *State v. Ueding-Nickel*, No. A-17-732., 2018 WL 5278703 (Neb. Ct. App. Oct. 23, 2018), *petition for further review denied* (Jan. 8, 2019)[6].

---

[5] The Respondent appears to agree that all claims asserted here were raised in the pro se request for post-conviction relief in the district court. Because the district judge resolved the post-conviction matters on the merits, there was no procedural default at that level.

[6] That opinion may be found at Filing no. 5-4.

Claims 7-9 in this case (relating to ineffective assistance of appellate counsel) were not considered by the Nebraska Court of Appeals because they had not been properly presented pursuant to regularly enforced Nebraska appellate rules. The Court observed:

> We first note that Ueding-Nickel does not assign error to the district court's determination that his appellate counsel was not ineffective. To be considered by an appellate court, an alleged error must be both specifically assigned on appeal and specifically argued in the appellate brief of the party assigning the error. *Heitzman v. Thompson*, 270 Neb. 600, 705 N.W.2d 426 (2005). As such, the court will not address the performance of the appellate counsel.

*Id.* at *2.

The remainder of the claims (1-6) were considered[7] by the Nebraska Court of Appeals and rejected for a variety of reasons. In particular, regarding Claim One (which, as we shall see, was the only claim properly presented to the Nebraska Court of Appeals *and* the Nebraska Supreme Court), the Nebraska Court of Appeals wrote:

> Ueding-Nickel first claims that his trial attorneys were deficient in their presentation of evidence as to Ueding-Nickel's allegation that his post-*Miranda* statements were involuntary due to his intoxication. Ueding-Nickel recites a variety of factual allegations to support this claim, the majority of which were in the record that was reviewed by this court on direct appeal. As such evidence was previously reviewed and affirmed by this court as to Ueding-Nickel's post-*Miranda* statements, there can be no justiciable claim as to ineffective assistance of counsel as there can be no prejudice. *See State v. Robertson*, 294 Neb. 29, 881 N.W.2d 864 (2016). The only new factual allegations that were

---

[7] I note that the claims were phrased slightly differently by the Nebraska Court of Appeals. However, the Respondent does not assert that Claims 1-6 in this case were not fairly presented to the district court or the Nebraska Court of Appeals.

presented by Ueding-Nickel as to this point, were the detox reports from his initial incarceration. Ueding-Nickel alleges these documents along with the fact that he was placed in a detox unit at the Douglas County Department of Corrections' facility demonstrate that he was severely intoxicated at the time of his post-*Miranda* statements. However, on their face these documents do not establish that Ueding-Nickel was intoxicated at the time, only that due to his substance abuse he was at risk for suffering substance withdrawal which was treated by the staff. Therefore, Ueding-Nickel has not presented a justiciable claim as to his post-*Miranda* statements on the basis of intoxication.

*Id.* at *3.

A petition for further review was filed. Filing no. 5-10. However, it raised only two issues. They were that (1) the Court of Appeals erred regarding Claim one in this case–the assertion that counsel performed deficiently with respect to the defense that Petitioner was too drunk to confess; and (2) the Court of Appeals erred by failing to address the deficient performance of counsel in the direct appeal. The Nebraska Supreme Court summarily denied the petition. Filing no. 5-2 at CM/ECF p. 4.

### *The Law Of Procedural Default*

I start with a brief recitation of the law of procedural default. As set forth in 28 U.S.C. § 2254:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A state prisoner must therefore present the substance of each federal constitutional claim to the state appellate courts before seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented to the trial court, and then in an appeal to *either* the Nebraska Supreme Court directly[8] or to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the offender. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

Turning for a moment to Nebraska law, two things are particularly relevant here. Under Nebraska law, you don't get two bites of the post-conviction apple; that

---

[8] Where a life sentence has been imposed in a criminal case the appeal goes directly to the Nebraska Supreme Court. Neb. Rev. Stat. § 24-1106 (West).

is, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003).

Furthermore, on appeal in Nebraska, the appealing party must both assign the specific error and specifically argue that error in the brief. Otherwise the claim is defaulted under Nebraska law. *State v. Henry*, 875 N.W.2d 374, 407 (Neb. 2016) (stating an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court).

Returning back to federal law, where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

To be more precise, a federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in the state courts pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (Defense counsel's failure to file timely notice of appeal with regard to petitioner's state court appeal did not constitute "cause" that excused procedural default, so as to permit federal habeas review). If a petitioner is actually, meaning factually, innocent, that is the type of miscarriage of justice that could warrant excusing the procedural default. *See*, *e.g.*, *Dansby v. Hobbs*, 766 F.3d 809, 840 (8th Cir. 2014).

Regarding the issue of "cause," such "[c]ause must be 'something *external* to the petitioner, something that cannot fairly be attributed to him.'" *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (quoting *Coleman*, *supra*) (emphasis in original). To establish "actual prejudice," a petitioner must show that the errors of which he complains "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). As regards a claim of actual innocence and thus a miscarriage of justice, a petitioner "must present new reliable evidence that he was innocent of the crime of which he was convicted." *Storey v. Roper*, 603 F.3d 507, 524 (8th Cir. 2010).

### *The Deference That Is Due Under 28 U.S.C. § 2254(d)*

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

-13-

proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to

the 'last reasoned decision' of the state courts." *Id.* at 497 (citation omitted). A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.*

### *The Especially Deferential Strickland Standard*

When a petitioner asserts an ineffective assistance of counsel claim, the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984), must be applied. The standard is very hard for offenders to satisfy.

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Id.* at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with special vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111 (2009). In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* at 123 (internal quotation marks and citations omitted).

The Supreme Court has emphasized that *Strickland* applies equally to appellate counsel, and that appellate counsel is entitled to the "benefit of the doubt." *Woods v. Etherton*, 136 S. Ct. 1149, 1153 (2016) (a "fairminded jurist" could have concluded that repetition of anonymous tip in state-court cocaine-possession trial did not establish that the uncontested facts it conveyed were submitted for their truth, in violation of the Confrontation Clause, or that petitioner was prejudiced by its admission into evidence, precluding federal habeas relief under Antiterrorism and Effective Death Penalty Act (AEDPA); Petitioner could not establish that Petitioner's appellate counsel was ineffective, as appellate counsel was entitled to the "benefit of the doubt").

### *My Analysis*

Claim One–regarding the assertions that trial counsel, presumably both at the suppression hearing and at the bench trial–were ineffective for failing to convince the trial court that Petitioner was drunk and thus unable to give a knowing, intelligent and voluntary confession, must be denied for three separate reason. Briefly, I explain those next.

First, I must give deference to the Nebraska courts on this question and there is no basis for concluding that the Nebraska courts either as a matter of fact or law

acted unreasonably in arriving at the conclusion that defense counsel were not ineffective.

Second, even if I were to reach the merits, the evidence is so overwhelming that Petitioner was not drunk when he confessed that counsel could not have been reasonably expected to pull a rabbit out of a hat. They made a valiant effort but that effort was doomed by the extremely careful way the Omaha police conducted the interrogation, an interrogation, by the way, that was recorded on video and viewed by the trial judge.

Third, even if the confession had somehow been suppressed, the other evidence would have been more than sufficient to obtain a conviction beyond a reasonable doubt and thus Petitioner is unable to establish the prejudice prong of *Strickland*. For example, Petitioner's act of destroying photographic evidence of his illicit behavior with the child, photographs that the mother had seen, by smashing in a car window and grabbing his cell phone from the child's mother so he could destroy the phone with the incriminating photos is compelling evidence of guilt when that evidence is coupled with the statements of the mother, the child and the physician who examined and spoke with the child shortly afterwards.

All of the other claims have been defaulted. Claims 2-6 were not presented by post-conviction appellate counsel to the Nebraska Supreme Court by way of a petition for further review. Claims 7-9 were lost before the Nebraska Court of Appeals when the state appellate rules were not followed by post-conviction appellate counsel. Additionally, Petitioner has failed to establish cause, prejudice or a miscarriage of justice sufficient to excuse these defaults.

Lastly, and almost as an afterthought, Petitioner mentions *Martinez v. Ryan*, 566 U.S. 1 (2012) (where, as in Arizona, ineffective-assistance-of-trial-counsel claims must be raised in an initial-review collateral proceeding, a procedural default will not

bar a federal habeas court from hearing those claims if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective) and *Trevino v. Thaler*, 569 U.S. 413 (2013) (where, as in Texas, a State's procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise an ineffective-assistance-of-trial-counsel claim on direct appeal, the exception recognized in *Martinez* applies). Essentially, Petitioner argues that his post-conviction appellate counsel erred and therefore the procedural defaults may be excused on the basis of *Martinez* and *Trevino*. Petitioner's argument, made in passing, is unavailing.

The courts, including this one, have limited *Martinez* and *Trevino* to the peculiar circumstances that existed in those two cases and those peculiar circumstances are not present here. *See Davila v. Davis*, 137 S. Ct. 2058, 2065(2017) ("Petitioner asks us to extend *Martinez* to allow a federal court to hear a substantial, but procedurally defaulted, claim of ineffective assistance of appellate counsel when a prisoner's state postconviction counsel provides ineffective assistance by failing to raise that claim. We decline to do so."); *Arnold v. Dormire*, 675 F.3d 1082,1086-88 (8th Cir. 2012) (distinguishing *Martinez* and holding that any error by post-conviction appellate counsel did not constitute cause to excuse procedural default on other ineffective assistance claims); *Williams v. Kenney*, No. 4:13CV3170, 2014 WL 5107145, at *6 (D. Neb. Oct. 10, 2014) (*Martinez* and *Trevino* do not apply to cases involving a procedural default occurring at the appellate stage when the prisoner has been heard by the state post-conviction trial judge).

### *No Certificate of Appealabity*

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for

certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). I have applied the appropriate standard and determined that Petitioner is not entitled to a certificate of appealability.

IT IS ORDERED that the habeas corpus petition, Filing no. 1, is denied and dismissed with prejudice. No certificate of appealability has been or will be issued. Judgment will be issued by separate document.

DATED this 16th day of September, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge